(77 Misc. Rep. 555.)

## PEOPLE v. LEVY.

(Court of General Sessions of the Peace, New York County.  September, 1912.)

INDICTMENT AND INFORMATION (§ 111*)—UNLAWFUL SELLING OF COCAINE—NEGATIVING EXCEPTION.

An indictment under Penal Law (Consol. Laws 1909, c. 40) § 1746, charging defendant with selling an unknown quantity of cocaine at retail, not on the prescription of a physician, which pleads the existence of certain alleged facts to negative that the sale fell within any of the classes excepted by statute, is good as against a demurrer.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 295–298; Dec. Dig. § 111.*]

Abraham A. Levy was indicted for selling cocaine in violation of law.  Demurrer to indictment overruled.

John F. McIntyre, of New York City, for demurrant.

Charles S. Whitman, Dist. Atty., of New York City (James A. Delehanty, Asst. Dist. Atty., of New York City, of counsel), for the People.

CRAIN, J.  The defendant demurs to an indictment designed to charge him with making a sale of cocaine in violation of section 1746 of the Penal Law.  The demurrant contends that the indictment does not charge the commission of such crime.  This contention is based on the claim that the indictment does not sufficiently negative the exceptions incorporated in the body of the statute, and that it therefore does not sufficiently describe the crime charged.

The indictment charges the defendant with making a sale of one of the substances mentioned in the statute, in violation of the statutory condition upon which alone such a sale not falling within the excepted cases could lawfully be made, to wit, with making a sale not upon the written prescription of a duly registered physician. The pleader then pleads the existence of certain alleged facts, with a view to negativing that the sale as made fell within any of the classes of sales excepted by the statute from the general rule or test of legality.

It is conceded that it was necessary for the pleader to negative such exceptions, in order that the description of the crime might in all respects correspond with the statute, and that if he has not successfully done so the demurrer must be allowed.  People v. Stedeker, 175 N. Y. 57, 67 N. E. 132; Rowell v. Janvrin, 151 N. Y. 60, 45 N. E. 398; Jefferson v. People, 101 N. Y. 19, 3 N. E. 797; Harris v. White, 81 N. Y. 532.  The question presented for decision is whether the indictment meets this requirement.

The chief argument as contained in the memorandum and supplemental memorandum filed by the learned counsel for the demurrant in support of the demurrer is that the indictment cannot "successfully charge" that the sale as made was "not at wholesale," as it charges the sale of an "unknown quantity," and this under a statute which fixes no amount by way of measure as the amount required to

constitute a sale at wholesale; that the statute permits of a sale at wholesale by one not a wholesale dealer or manufacturer, upon the written order of a licensed pharmacist, druggist, veterinary or dentist; and that the indictment is bad, because it does not negative that such was the sale made by the defendant.

It is urged in support of this construction of the statute that to limit sales at wholesale to wholesale dealers or manufacturers "would bring the corner pharmacy within the condemnation of the law," and preclude such from lawfully compounding "a prescription" of which cocaine was an ingredient. The demurrant then advances what may be called certain subsidiary contentions in support of his demurrer, all of which have been considered, and so far as necessary hereinafter alluded to.

The answer to the first suggestion is that, if an explicit allegation in the indictment that the sale as therein alleged to have been made by the demurrant was "not at wholesale" is not nullified by the accompanying allegation that such alleged sale was of "an unknown quantity," the indictment "successfully," because clearly and unambiguously, alleges that such sale was not at wholesale. It is not so nullified unless either the statute makes quantity a test of a sale at wholesale, or usage so clearly makes it so that the courts must take judicial notice of that fact. It is conceded that the statute does not in terms attempt to make the quantity sold the test of whether the sale is at wholesale or retail, and, indeed, the demurrant urges this as a defect in the law. It is almost equally uncontrovertible that it is not made so by usage, whether the word "wholesale" be considered from the standpoint of the lexicographers, or from that of the commercial world. While sales at wholesale are doubtless usually of larger quantities than those at retail, they are not invariably so, and the determining factor between what constitutes, on the one hand, a sale at "wholesale," and, on the other, what constitutes one at "retail," is rather the use to which the article sold is to be put up by the buyer. Thus, where the use by the buyer of the article bought is its manufacture into another product, or its sale in subdivisions at retail for the personal consumption of others, the sale is usually at wholesale, regardless of the quantity bought. The fact that there are exceptions to this rule does not militate against the existence of the rule, but presents cause for questioning the correctness of the construction given to the statute by the demurrant, in that the existence of such exceptions suggests a reason for the contrary construction hereinafter given to the law, and this reason is that such contrary construction makes for greater certainty by limiting the exceptions to such sales at wholesale as are made by wholesale dealers.

This construction is, moreover, plainly required by the language of the statute. The section in this connection reads:

"Except, however, that such alkaloid cocaine · * * * may lawfully be sold *at wholesale,* * * * provided that the *wholesale dealer* shall affix * * * to the bottle * * * containing the article sold and upon the outside wrapper of the package as originally put up a label * * * with the name and place of business of the seller, * * * and provided also

that the *wholesale dealer* shall before delivering any of the articles make
\* \* \* in a book kept for the purpose an entry of the sale thereof. \* \* \*."

For the words "provided that" the word "if" may be substituted,
and the section would then read: "Except, however, that such al-
kaloid cocaine \* \* \* may be lawfully sold at wholesale \* \* \*
if the 'wholesale dealer' shall affix," etc., "and if" before delivery
such wholesale dealer shall make the book entry required. These
provisions are restrictions upon the sale and are intended to operate
upon the seller, but are in terms made to operate upon a *"whole-
sale dealer,"* in consequence of which the statute operates only upon
a *wholesale dealer,* and so limits the exemptions conferred by the
first statutory exception as stated to sales at wholesale when made
by *wholesale dealers.*

An analysis of the statute shows that it makes sales generally of
certain mentioned substances lawful only upon a stated condition.
It then excepts from this general rule or test of legality sales of such
substances at wholesale by wholesale dealers, legalizing such under
certain other stated conditions and restrictions. These conditions and
restrictions in effect substitute as the prerequisite to a lawful sale a
written "order" for a written "prescription," permit such validating
order to come from classes of persons not empowered to give a val-
idating "prescription," and, contrastively with the requirements re-
specting the preservation of the "prescription," and the furnishing to
the buyer of a "certificate" relating to the "prescription," impose no
obligation upon the seller to retain such an "order" or to furnish to
the buyer any analogous "certificates." They add, however, require-
ments respecting the marking of the article sold, the recording of the
sale, and the preservation of the record.

The statute then further excepts from such general rule or test of
legality sales of such substances, whether at wholesale or retail, when
the sellers and buyers occupy certain defined relations to each other
and to the substances sold—making such sales lawful under still dif-
ferent conditions and restrictions. The statute, when such relations
exist, dispenses with the requirement of "prescriptions" and "orders,"
imposes the obligation that the package be sealed, modifies the require-
ment respecting the record of the sale by the seller, and creates an
obligation upon the buyer to record in a prescribed manner the pur-
chase. The statute thus enacts a test of legality with respect to sales
of the enumerated substances by people generally, another test of
legality with respect to such sales when made to the public at large
by wholesalers at wholesale, and still another test of legality when
made by manufacturers or wholesalers under certain circumstances
to other manufacturers or wholesalers. The statute plainly defines
what sales shall fall within the first exception to those whose legality
is to be tested by the general rule.

The indictment, moreover, clearly negatives that the sale as alleged
to have been made by the demurrant fell within the first exception.
The contention by the demurrant to the contrary in this connection,
so far as not heretofore commented upon, is that the indictment does
not negative that the sale was upon the written order of a licensed

pharmacist or druggist. This is true; but such a negative was, for the reasons heretofore stated, unnecessary, as the indictment alleges that the sale was not at wholesale or by a wholesale dealer. It is only in such cases, where a written order is required as a prerequisite, that such order may come from a licensed pharmacist or druggist.

Sales at retail, unless made by the classes mentioned in the second exception, cannot lawfully be made, except upon the written prescription of a duly registered physician. Moreover, the statute does not, as in substance alleged by the demurrant, make a qualified exception in favor of licensed pharmacists or druggists as such. If such are retail dealers and make a sale at retail, it can only lawfully be made upon the written prescription of a duly registered physician. Hence it was unnecessary as contended by the demurrant—the pleader having negatived that the demurrant was a wholesale dealer or that the sale was at wholesale—to negative in the indictment that the demurrant was a licensed pharmacist or druggist.

The statute does not so clearly define what sales fall within the second exception. By reason of this lack of clearness, two constructions of this second exception are possible—one literal, the other influenced by the context—and the sufficiency of the indictment as negativing this second exception, while not challenged by the demurrant in the memoranda filed, is dependent upon the construction to be given to such exception. The literal construction takes all sales by manufacturers, no matter what they manufacture, out of the general rule testing the legality of sales, and makes applicable to them the special rule or test contained in the second statutory exception.

The construction, as influenced by the context, limits the scope of the second exception, so far as manufacturers are concerned, to those making some one or more of the substances mentioned in the section, and to sales, so far as manufacturers are concerned, to those in which the substance sold is of a kind made by the seller. May a manufacturer of one of the substances mentioned in the statute lawfully sell another such substance not manufactured by him to another manufacturer or to a wholesale dealer? If he may, then the indictment is demurrable, because it negatives only that the demurrant was a manufacturer of one of the substances mentioned in the law, and does not negative the manufacture by him of other substances mentioned in the law. It merely negatives in this connection that he was a manufacturer of the particular substance which he is charged with selling.

The answer to be given to this question depends in part upon the construction to be placed upon the words "provided also that any manufacturer may sell to another manufacturer of the same article, or to a wholesale dealer in drugs," etc. The words in quotation, "any manufacturer," literally taken, are broad enough to embrace makers of articles or substances wholly different from any enumerated in the statute—as, for example, a manufacturer of shoes or a manufacturer of carriages. Such construction is so plainly unreasonable that its correctness cannot be seriously urged. It robs the exception of cause for existence, and violates the rule that, in determining the meaning

of general words, such meaning is to be ascertained by reference to the words with which they are associated.

Less palpably absurd, but nevertheless incorrect, would be a holding that the statute is satisfied where the maker of some one of the substances mentioned in the law sells another of such substances. When the law says "any manufacturer may sell to *another* manufacturer of the same article," etc., the words "the same article" mean the article which in the given case is the subject of the purchase and sale. As coupled with the word "another," where that word occurs before "manufacturer," they must therefore be construed as requiring not merely that the person to whom the sale is made shall himself be a manufacturer of the article which he buys, but, in order that the buyer may answer to the description of "another manufacturer of the same article" (that is to say, of the article bought), when described by statutory reference to the seller, that the seller shall be a manufacturer of the article sold and not merely a manufacturer of some other article. The word "manufacturer," where employed in the section to characterize the seller, is used not to describe the general business of the seller—which, from the viewpoint of the object of the law, is immaterial—but his relationship to the article sold, which, from the like viewpoint, is material, if not vital. Else, why should a manufacturer be excepted from the general rule?

Only one reason suggests itself, namely, the special relation which he bears to the product sold. This is the only construction which attaches meaning to the words "another manufacturer of the same article." Any other construction makes the phrase superfluous and meaningless. That which is afterward said in the statute in the same connection about a sale in the "original package" reinforces the construction that the seller, if a manufacturer, must be a manufacturer of the article sold. It is plain that the lawmakers did not consider it against the public interests that the substances named should be manufactured or dealt in commercially, and their manufacture is not forbidden, nor yet their sale, under defined conditions.

While the substances mentioned, when taken internally, are first stimulants, and then narcotics, producing by long-continued use insomnia, decay of moral and intellectual power, emaciation, and death, they have their lawful and proper use. Having such lawful and proper use, certain classes of persons may lawfully bring them into existence and commercially handle them. The manufacturer selling to a fellow manufacturer or to a wholesale dealer, or a wholesale dealer to a fellow wholesaler, is not presumptively selling under conditions militating against the public health or morals; but where one not occupying such a relation to the product sells to another at retail, and therefore presumptively neither for purposes of commerce, nor manufacture, but for consumption by the buyer, the requirement that the sale shall be upon the written prescription of a duly registered physician is justified, in the interest of the public health and morals by the nature of the article sold.

This being so, when the indictment, having negatived that the defendant came within the first statutory exception, negatived that the

defendant was a manufacturer of the article sold, it fully negatived the applicability to the sale as therein alleged to have been made by the demurrant of the exception in the statute relating to sales by manufacturers, and fully negatived all statutory exceptions.

Demurrer disallowed.